**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDWIN KIPLAGAT CHEPSIROR,

　　　Petitioner,

v.

ERIC H. HOLDER, JR.,

　　　Respondent.

No. 10-9532
(Board of Immigration Appeals)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL** and **LUCERO**, Circuit Judges.

---

Edwin Kiplagat Chepsiror, a native and citizen of Kenya, seeks judicial review of

a final order of removal issued by the Board of Immigration Appeals (BIA), which

affirmed the immigration judge's denial of Chepsiror's application for asylum and

withholding of removal.  Exercising jurisdiction under 8 U.S.C. § 1252, we deny the

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App.
P. 32.1 and 10th Cir. R. 32.1.

petition for review.

## BACKGROUND

On August 11, 2004, Chepsiror entered the United States as an F-1 nonimmigrant foreign student with authorization to remain in the United States through August of 2009 for the purpose of pursuing a full course load at Utah State University. Chepsiror attended one semester at Utah State University, but then on January 26, 2005, he informed the University that he would not attend school in 2005 because he planned to return to Kenya.

But on January 13, 2005, Chepsiror filed an application for asylum with the U.S. Citizenship and Immigration Service. Chepsiror claimed that he feared returning to Kenya because he assisted the Kenyan police in investigating members of the Mungiki sect who murdered his father. Chepsiror explained that in retaliation for his assistance, members of the Mungiki attacked him and his family, and left threatening letters at his house. An asylum officer interviewed Chepsiror, determined that he did not establish eligibility for asylum, and so referred his application to an immigration judge pending service of a notice to appear.

On April 26, 2005, appearing before an immigration judge without counsel, Chepsiror contested the allegation that he failed to comply with the terms of his student visa. He explained that he took a leave of absence from school because his mother died in Kenya. Therefore, the immigration judge set the case for September 13, 2005, so that the parties could brief the issue of Chepsiror's removability and so that a hearing could

2

be held on the merits of Chepsiror's application for asylum. Before that hearing though, Chepsiror retained counsel and informed the immigration judge that he no longer challenged his removability. Instead Chepsiror only wanted to pursue his application for asylum. When the hearing on September 13, 2005, arrived, Chepsiror did not appear. Therefore, the immigration judge ordered Chepsiror removed in absentia.

Three days later, Chepsiror filed a motion to reopen the case, and the immigration judge granted it. On January 18, 2008, Chepsiror appeared pro se before the immigration judge to testify in support of his application for asylum. At the conclusion of his testimony, the immigration judge denied all relief and ordered Chepsiror removed to Kenya.

Chepsiror then appealed to the BIA. The BIA agreed with the immigration judge's conclusion that Chepsiror failed to establish that any harm or fear he experienced in Kenya was on account of one of the five grounds enumerated in the definition of "refugee." Specifically, the BIA rejected Chepsiror's claim that he had been and would continue to be targeted in Kenya by the Mungiki group because of his membership in a particular social group, because of his religion, or because of his political opinion. Therefore, the BIA dismissed Chepsiror's appeal. Chepsiror now seeks review by this Court, arguing that the BIA erred by affirming the immigration judge's determination to

deny him asylum and withholding of removal.[1]

## DISCUSSION

This Court reviews the BIA's determination that an alien is ineligible for asylum and withholding of removal under the substantial evidence standard. Yuk v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir. 2004). Under that standard, this Court will affirm the "BIA's determination that [the applicant is] not eligible for asylum . . . if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (internal quotation marks omitted). But this Court will reverse such a determination "if the evidence presented by [the applicant] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id. In other words, the BIA's determination is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To be eligible for asylum, an alien must establish that he is a refugee. Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004). A refugee is a person who is unwilling to return to his country of nationality "because of persecution or a well-founded fear or persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In this case, Chepsiror argues

---

[1] Before the immigration judge and the BIA, Chepsiror also raised a claim under the Convention Against Torture. But on appeal to this Court, Chepsiror does not contest the BIA's affirmance of the IJ's determination to deny him protection under the Convention Against Torture. That issue is therefore waived. See Kabba v. Mukasey, 530 F.3d 1239, 1248 (10th Cir. 2008); Krastev v. I.N.S., 292 F.3d 1268, 1280 (10th Cir. 2002).

that members of the Mungiki murdered his father and because he assisted police in investigating his father's murder, members of the Mungiki threatened him in order to deter him from further assisting the police.

The immigration judge and the BIA concluded that the threats of the Mungiki were not based on Chepsiror's race, religion, nationality, membership in a particular social group, or political opinion. And we agree. Chepsiror argues that the Mungiki threatened his family, which is a particular social group, but his statements in his asylum application, his asylum interview, and his testimony in front of the immigration judge undermine that argument. Chepsiror consistently stated that members of the Mungiki threatened him solely in retaliation for assisting the police investigation and to prevent him from continuing to assist the police, not because of his family affiliation. (Aplt. App. at 163–69, 317–18, 407–08.) It is well established that mistreatment on account of "criminal incentives" or "personal hostility" do not make an applicant eligible for asylum. Vatulev v. Ashcroft, 354 F.3d 1207, 1209–10 (10th Cir. 2003). Thus, after a thorough review of the record, we conclude that a reasonable factfinder could not find that Chepsiror is eligible for asylum. Chepsiror has not shown that the evidence he presented or the questions he raised on appeal would compel a different result than the one reached by the BIA. Chepsiror, therefore, fails to meet the heavy burden placed on him to successfully challenge the adverse asylum determination.

**CONCLUSION**

The petition for review is DENIED.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge